1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  DEBORAH DEE LITTLE, *ET AL.*,            Case No.  14-cv-02181-BAS(JMA)

12                          Plaintiffs,      **ORDER:**

13      v.                                   **(1) DENYING MOTION TO DISMISS PLAINTIFFS' COMPLAINT OF DEFENDANT SHELLEY ZIMMERMAN (ECF NO. 3);**

14  WILLIAM D. GORE, *ET AL.*,

15                          Defendants.

16                                           **(2) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION OF PLAINTIFFS' COMPLAINT FILED ON BEHALF OF DEFENDANTS WILLIAM D. GORE, MATTHEW STEVENS AND EVAN SOBCZAK (ECF NO. 7);**

17

18

19

20

21

22                                           **(3) GRANTING IN PART AND DENYING IN PART JUSTIN FAW'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 13)**

23

24

25

26          On September 12, 2014, Plaintiffs Deborah Dee Little and Dennis George

27  Little (collectively, "Plaintiffs") commenced this action against Defendants William

28  D. Gore ("Gore"), as Sheriff for the County of San Diego, Shelley Zimmerman

1   ("Zimmerman"), as Chief of Police for the City of San Diego, Matt Stevens

2   ("Stevens"), a Deputy Sheriff for the County of San Diego, Evan Sobczak

3   ("Sobczak"), a Deputy Sheriff for the County of San Diego, Paul Paxton ("Paxton"),

4   a Detective for the San Diego Police Department, and Justin Faw ("Faw"), a Special

5   Agent for the Drug Enforcement Administration ("DEA").  Presently before the

6   Court are (1) a motion to dismiss all causes of action filed by Zimmerman; (2) a

7   motion to dismiss the second, third, and fourth causes of action filed by Stevens and

8   Sobczak, and all causes of action by Gore; and (3) a motion to dismiss all causes of

9   action by Faw.

10   The Court finds these motions suitable for determination on the papers

11   submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set

12   forth below, the Court **DENIES** Zimmerman's motion to dismiss (ECF No. 3);

13   **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss filed by Gore,

14   Sobczak and Stevens (ECF No. 7); and **GRANTS IN PART** and **DENIES IN PART**

15   Faw's motion to dismiss (ECF No. 13).

16   **I.   BACKGROUND**

17   On October 16, 2012, Stevens swore an affidavit to San Diego County Superior

18   Court stating that he observed "well over 100 growing marijuana plants" on

19   Plaintiffs' property while conducting aerial reconnaissance on September 17, 2012

20   and October 11, 2012.  (ECF No. 1 ("Compl.") at ¶ 11-12.)  Plaintiffs allege

21   Defendant Stevens "knew from his observations that there were well under 100

22   marijuana plants on the [property] but embellished his observations in order to

23   deceive Judge Rubin into issuing a search warrant."  (*Id*. at ¶ 12.)  Judge Rubin

24   subsequently issued a search warrant authorizing the search of Plaintiffs' property

25   and the seizure of any marijuana.  (*Id*. at ¶ 12.)

26   At 5:00 a.m. on October 17, 2012, Stevens, Sobczak, Paxton, and Faw

27   (collectively, the "Defendant Officers"), members of the San Diego County

28   Integrated Narcotics Task Force, executed the search warrant at Plaintiffs' property.

14cv02181

1    (*Id.* at ¶15.)  The Defendant Officers, "dressed in military-style fatigues and armed

2    with firearms, some of which were assault rifles, stormed [Plaintiffs' property] in a

3    SWAT-style raid with weapons drawn."  (*Id.* at ¶ 16.)  Upon entering Plaintiffs'

4    property, the Defendant Officers located Mr. Little, arrested him and put him in

5    handcuffs.  (*Id.* at ¶ 17.)  Stevens allegedly "questioned [Mr. Little] without reading

6    him *Miranda* rights despite keeping [Mr. Little] in handcuffs."  (*Id.* at ¶ 18.)  The

7    Defendant Officers then located Mrs. Little, and Sobczak "arrested [her] by putting

8    handcuffs on [her] wrists behind her back and locking her in the rear seat of his patrol

9    vehicle with the air conditioning running, despite the cold air outside. (*Id.* at ¶ 19.)

10   Prior to her arrest, Mrs. Little informed the Defendant Officers that "she has been

11   sick for the past two months with pneumonia."  (*Id.* at ¶19.)

12       "After an unknown period of time, [Stevens] questioned [Mrs. Little] without

13   reading her *Miranda* rights."  (*Id.* at ¶ 20.)  Sobczak then removed Mrs. Little from

14   the patrol vehicle "after an unknown period of time" and ordered her to remain seated

15   in a chair.  (*Id.* at ¶ 21.)  Before sitting down, Mrs. Little, who was wearing only

16   shorts and a t-shirt, informed the Defendant Officers "that the chair was on top of an

17   anthill of red ants and that she was extremely allergic to red ants, that she was very

18   cold, and that she was suffering from various symptoms of HIV."  (*Id.*)  Despite

19   informing the Defendant Officers on several occasions that she needed to use the

20   bathroom and could not control her bladder because of radiation damage to her

21   bladder and intestines from her cancer treatment, Mrs. Little was not allowed to use

22   the bathroom.  (*Id.* at ¶ 22.)  As a result, she involuntarily relieved herself while seated

23   outside and was unable to change into clean clothing until the Defendant Officers left

24   the property.  (*Id.*)

25       At the time of the search, Plaintiffs were "valid qualified patients under Cal.

26   Health & Safety [Code] §§ 11362.5 and 11362.765," and Mr. Little was Mrs. Little's

27   primary caregiver.  (*Id.* at ¶ 24.)  Plaintiffs allege the Defendant Officers searching

28   the property were aware of these facts.  (*Id.*)

In the course of conducting the search, Stevens claimed the Defendant Officers located over 640 pounds of marijuana "in the form of untrimmed buds, packaged marijuana, and marijuana edibles." (*Id.* at ¶ 25.) Plaintiffs allege that "[i]n reality, [they] were in possession of far less processed and unprocessed marijuana." (*Id.*) Plaintiffs allege the Defendant Officers destroyed the seized marijuana the following day by dumping it at the Miramar Landfill. (*Id.* at ¶ 26.)

On November 5, 2012, the San Diego County District Attorney filed a criminal complaint charging Plaintiffs with one count of unlawful possession of marijuana for sale in violation of California Health and Safety Code section 11359, and one count of unlawful cultivation of marijuana in violation of California Health and Safety Code section 11358. (*Id.* at ¶ 27.) In the course of pretrial hearings, the trial court granted a motion to exclude evidence pursuant to *Arizona v. Youngblood*, 488 U.S. 51 (1988) and *California v. Trombetta*, 467 U.S. 479 (1984), "finding that the [Defendant] [O]fficers had violated the [Plaintiffs'] due process rights by destroying material, exculpatory evidence." (*Id.* at ¶ 28.) At the end of the trial, the jury returned a verdict of not guilty on the charge of unlawful possession and deadlocked on the charge of unlawful cultivation. (*Id.* at ¶ 29.) The trial court ultimately dismissed the cultivation count in the furtherance of justice pursuant to California Penal Code section 1385. (*Id.*)

Plaintiffs commenced this action on September 12, 2014 asserting the following causes of action in violation of 42 U.S.C. § 1983: (1) search and seizure unsupported by a warrant against Stevens; (2) unreasonable search against all defendants; (3) excessive force against all defendants; (4) *Miranda* violations against Stevens; and (5) due process violations against all defendants.

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court

14cv02181

must accept all allegations of material fact pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

///

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., *Inc*., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002)).  "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc*., 896 F.2d at 1555, n. 19.  Documents specifically identified in the complaint whose authenticity is not questioned by the parties may also be considered. *Fecht v. Price Co*., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other grounds); *see also Branch*, 14 F.3d at 453-54.  Such documents may be considered, so long as they are referenced in the complaint, even if they are not physically attached to the pleading. *Branch*, 14 F.3d at 453-54; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (rule extends to documents upon which the plaintiff's complaint "necessarily relies" but which are not explicitly incorporated in the complaint).  Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Fecht*, 70 F.3d at 1080 n.1.  Additionally, the court may consider materials which are judicially noticeable. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed.  Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.,* 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## III.   DISCUSSION

Zimmerman moves to dismiss all causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 3.)  Stevens and Sobczak move to dismiss the second, third, and fourth causes of action, and Gore moves to

dismiss all causes of action, for failure to state a claim under Rule 12(b)(6).  (ECF No. 7.)  Faw moves to dismiss all causes of action pursuant to Rule 12(b)(6) on the grounds that Plaintiffs' claims against him are barred by qualified immunity, and that Plaintiffs improperly brought section 1983, rather than *Bivens*, claims against him as a federal officer.  (ECF No. 13.)

### A.    Zimmerman's Motion to Dismiss

Zimmerman moves to dismiss all causes of action in the Complaint, arguing that she was not Chief of Police at the time of the incident, but rather the Assistant Chief, and is therefore not a properly named defendant in this action, and that Paxton was not acting as a San Diego Police Department Detective at the time of the incident, but rather under the authority of the Drug Enforcement Administration.  (ECF No. 3-1 at pp. 3-4.)  As an initial matter, Zimmerman raises factual disputes in her motion.  Courts may not consider material outside the complaint when ruling on a motion to dismiss, unless submitted as part of the complaint, identified in the complaint, or materials which are judicially noticeable.  *See Hal Roach Studios, Inc*., 896 F.2d at 1555, n. 19; *Branch*, 14 F.3d at 453-54; *Barron*, 13 F.3d at 1377; *Lee*, 250 F.3d at 688.  In support of her motion to dismiss, Zimmerman does not submit any materials or request judicial notice of the fact she was not Chief of Police at the time of the events underlying the Complaint, or that Paxton was not acting as a San Diego Police Department Detective at the time.  Simply making these arguments in her motion is insufficient.  Accordingly, these facts are not properly before the Court and cannot be considered in deciding the motion to dismiss.

Regardless, the Court notes this is an official capacity suit[1] and "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against

---

[1]    Although Zimmerman argues it is unclear whether she is being sued in her official or individual capacity, the Complaint, in combination with Plaintiffs' opposition, make it clear that Zimmerman is only being sued in her official capacity. *See Graham*, 473 U.S. at 167 n. 14 (where it is not clear in the complaint whether an official is being sued personally, or in his or her official capacity, or both, "[t]he

1   an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-

2   66 (1985) (citing *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55

3   (1978)).  "As long as the government entity receives notice and an opportunity to

4   respond, an official-capacity suit is, in all respects other than name, to be treated as a

5   suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985)).

6   "It is *not* a suit against the official personally, for the real party in interest is the

7   entity."  *Id.* at 166.  Accordingly, this suit, which is solely brought against

8   Zimmerman in her official capacity, is not a suit against her personally, but a suit

9   against the entity.

10        Moreover, under Federal Rule of Civil Procedure 25(d), if the prior Chief of

11   Police had been named in the Complaint in his or her official capacity, once the prior

12   Chief ceased to hold office, "[t]he officer's successor is automatically substituted as

13   a party." Fed. R. Civ. P. 25(d).  Therefore, even if the prior Chief of Police had been

14   named in the Complaint, the current Chief of Police, which is claimed to be

15   Zimmerman, would automatically be substituted as a party.  *See Griffith v. Lanier*,

16   521 F.3d 398, 399 (D.C. Cir. 2008).  As Zimmerman only moves to dismiss on the

17   grounds she was an improperly named party because she was not the Chief of Police,

18   and Paxton was not acting as a San Diego Police Department Detective, at the time

19   of the incident, for the foregoing reasons, Zimmerman's motion to dismiss is

20   **DENIED**.[2]

21   _____

22   course of the proceedings in such cases typically will indicate the nature of the
     liability sought to be imposed"); *Larez v. City of L.A.*, 946 F.2d 630, 640-41 (9th Cir.

23   1991).  (*See also* Compl. at ¶ 5 (Zimmerman "is the chief policymaker and
     decisionmaker for the San Diego Police Department on the use of force and the

24   disposition of evidence."); ECF No. 8 at p. 3 ("[T]he Complaint specifies that

25   Zimmerman is being sued in her official capacity as Chief of Police. . . . [Plaintiffs]
     sued Zimmerman in her official capacity in order [to] reach the City of San Diego.")

26   and p. 2 ("As Zimmerman is being sued in her official capacity….").)

27        [2]     In her reply, Zimmerman also argues that the Complaint's allegations

28   regarding the policies promulgated and adopted are vague and conclusory.  However,
     because Zimmerman did not make this argument in her initial motion to dismiss, the

**B.     Faw's Motion to Dismiss: *Bivens* vs. Section 1983**

Faw, who Plaintiffs allege is a Special Agent with the Drug Enforcement Administration, moves to dismiss all causes of action alleged against him "because federal actors generally cannot be held liable under 42 U.S.C. § 1983."  (ECF No. 13-1 at p. 16.)  Instead, Faw argues, the proper cause of action is pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id*.)  *Bivens* permits suits against "federal officials to compensate plaintiffs for violations of their constitutional rights," *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (citing *Bivens*, 403 U.S. at 394), while section 1983 only provides a cause of action against any person "acting under color of State law," *Morse v. N. Coast Opportunities, Inc*., 118 F.3d 1338, 1343 (9th Cir. 1997) (citing 42 U.S.C. § 1983).

In their opposition to Faw's motion to dismiss, Plaintiffs assert that their section 1983 claim against Faw is alternatively asserted as a *Bivens* claim, arguing that they need not plead a specific legal theory so long as sufficient factual allegations show that Plaintiffs may be entitled to some relief.  (ECF No. 15 at p. 12.)  Here, Plaintiffs allege in the Complaint that Faw was a member of the San Diego County Integrated Narcotics Task Force at the time of the incident, and participated, along with other members, in executing a State search warrant at Plaintiffs' property. (Compl. at ¶¶ 14, 15, n. 1.)  The search warrant resulted in the State bringing criminal charges against Plaintiffs.  (*Id*. at ¶ 27.)

---

argument is waived.  *See Somers v. Digital Realty Trust, Inc*., --- F. Supp. 3d ----, 2015 WL 4483955, at *13 (N.D. Cal. July 22, 2015); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (finding district court did not commit clear error in failing to consider arguments raised for the first time on reply because it "need not consider arguments raised for the first time in a reply brief"); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived); *Dytch v. Yoon*, No. C 10–02915 MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (explaining that parties "cannot raise a new issue for the first time in their reply briefs").

1    "Although federal officials acting under federal authority are generally not

2    considered to be state actors, they may be liable under [section] 1983 if they are found

3    to have conspired with or acted in concert with state officials to some substantial

4    degree."  *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992); *see also Gibson v.*

5    *United States*, 781 F.2d 1334, 1343 (9th Cir. 1986) ("Federal officers acting under

6    federal authority are immune from suit under section 1983 unless the state or its

7    agents significantly participated in the challenged activity.").  "The touchstone of this

8    analysis is ultimately "whether there is a sufficiently close nexus between the State

9    and the challenged action of the [federal actors] so that the action of the latter may be

10   fairly treated as that of the State itself."  *Id.*  (quoting *Jackson v. Metro. Edison Co.*,

11   419 U.S. 345, 351 (1974)).

12        Given the foregoing, the Court finds that Plaintiffs have plausibly pled that

13   Faw was acting under color of state law.  *See e.g., Motley v. Parks*, 432 F.3d 1072,

14   1076-77 (9th Cir. 2005), overruled on other grounds by *United States v. King*, 687

15   F.3d 1189 (9th Cir. 2012) (analyzing action brought against law enforcement officers

16   who participated in a combined state and federal gang task force under section 1983);

17   *Reynoso v. City & Cnty. of S.F.*, No. C 10-00984 SI, 2012 WL 646232, at *5-6 (N.D.

18   Cal. Feb. 28, 2012) (finding plaintiffs sufficiently alleged a symbiotic relationship

19   between police officers and ATF agents engaging in a search of plaintiffs' residence

20   to claim liability under section 1983); *see also Byars v. United States*, 273 U.S. 28,

21   32 (1927) ("[T]he mere participation in a state search of one who is a federal officer

22   does not render it a federal undertaking.").  Accordingly, to the extent that Faw moves

23   to dismiss on the grounds that Plaintiffs improperly brought this action as a section

24   1983 action, the motion is **DENIED**.[3]

25   _____

26        [3]   Although courts have considered claims denominated as section 1983
     claims against federal officers to be *Bivens* claims for the purpose of deciding a
27   motion to dismiss, as the same analysis largely applies, the Court declines to read a
     *Bivens* claim into Plaintiffs' Complaint.  *See Morse*, 118 F.3d at 1340 n. 4 (assuming,
28   as did the district court, for the purpose of deciding a motion to dismiss that the

                                    – 10 –                              14cv02181

**C.    Motion to Dismiss First Cause of Action: Invalid Search Warrant in Violation of 42 U.S.C. § 1983 Against Stevens**

Faw moves to dismiss Plaintiffs' first cause of action for search and seizure unsupported by a warrant.  The Fourth Amendment prohibits a search conducted pursuant to "an ill-begotten or otherwise invalid warrant."  *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).   To establish a claim of judicial deception under 42 U.S.C. § 1983, a plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth."  *Id.* (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1223–24 (9th Cir. 2009)).

Plaintiffs allege Stevens made fraudulent statements in his warrant affidavit "concerning the amount of marijuana on [Plaintiffs' property] and the implications of California's medical marijuana laws in an effort to subvert the magistrate's neutral function in issuing warrants, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution."  (Compl. at ¶ 31.)  As a "proximate result of Stevens's conduct," Plaintiffs allege "Judge Rubin issued a warrant that was not in fact supported by probable cause, which led to an illegal search" of Plaintiffs' property, the illegal arrest of Plaintiffs, and the illegal seizure and destruction of Plaintiffs' marijuana.  (*Id.* at ¶ 32.)

Faw moves to dismiss this cause of action on the grounds that it is not directed to him, as it is not alleged that he participated in obtaining the search warrant.  (ECF No. 13-1 at p. 9.)   Plaintiffs agree that the only defendant on this cause of action is

plaintiff's claim could have been brought under *Bivens* although the complaint only recited a section 1983 claim); *see also Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under [section] 1983 and those under *Bivens* are identical save for the replacement of a state actor under [section] 1983 by a federal actor under *Bivens*.")  If Plaintiffs wish to bring section 1983 and *Bivens* claims, in the alternative, they must specifically do so in a First Amended Complaint, and provide supporting factual allegations for each claim.

1  Stevens.  (*See* ECF No. 15 at p. 1.)  Accordingly, the Court **GRANTS** Faw's motion
2  to dismiss the first cause of action as to him.

3        **D.     Motion to Dismiss Second Cause of Action: Unreasonable Search in**
4              **Violation of 42 U.S.C. § 1983 Against All Defendants**

5        Plaintiffs allege the Defendant Officers conducted an unreasonable search of
6  Plaintiffs' property.  (Compl. at ¶ 37.)  "The test of what is necessary to 'execute a
7  warrant effectively' is reasonableness."  *San Jose Charter of Hells Angels Motorcycle*
8  *Club v. City of San Jose*, 402 F. 3d 962, 971 (9th Cir. 2005) (quoting *Lawmaster v.*
9  *Ward*, 125 F. 3d 1341, 1349 (10th Cir. 1997)).  A court "must examine the totality of
10  the circumstances to determine whether a given search was reasonably executed."
11  *United States v. Combs*, 394 F.3d 739, 743 (9th Cir. 2005).   "[T]he test for
12  reasonableness is often a question for the jury."  *Jackson v. City of Bremerton*, 268
13  F.3d 646, n. 1 (9th Cir. 2001).

14              1.     Stevens and Sobczak

15        Stevens and Sobczak move to dismiss the second cause of action on the
16  grounds that "[d]escribing the execution of the search warrant as 'SWAT-style' and
17  identifying the clothes worn and the weapons carried by the officers does not make
18  the search unlawful."  (ECF No. 7-1 at p. 5.)  In the Complaint, Plaintiffs allege that
19  the Defendant Officers executed the search warrant at approximately 5:00 a.m. on
20  October 17, 2012, unannounced, and "stormed" the property wearing military
21  fatigues and using assault rifles "in a SWAT-style raid with weapons drawn."
22  (Compl. at ¶¶ 15, 16, 37.)  Plaintiffs allege that the execution of the search in such a
23  manner was unreasonable in violation of the Fourth and Fourteenth Amendments.
24  (*Id.* at ¶ 37.)

25        The deployment of a SWAT team in the dark with weapons drawn may be
26  considered unreasonable in light of the totality of the circumstances.  *See Bravo*, 665
27  F. 3d. at 1086 ("SWAT officers' nighttime searches . . . constitute much greater
28  intrusions on one's privacy than ordinary daytime searches and carry a much higher

risk of injury to persons and property); *Alexander v. City & Cnty. of S.F.*, 29 F.3d 1355, 1366-67 (9th Cir. 1994) (explaining that a jury might conclude that deployment of a SWAT team for the purpose of inspecting property was excessive); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1190 (10th Cir. 2001) ("[T]he decision to deploy a SWAT team to execute a warrant must be 'reasonable' because it largely determines how the seizure is carried out, thereby determining the extent of the intrusion on the individual's Fourth Amendment interests."); *Estate of Smith v. Marasco*, 430 F.3d 140, 149 (3d Cir. 2005) ("[A] decision to employ a SWAT-type team can constitute excessive force if it is not 'objectively reasonable' to do so in light of 'the totality of the circumstances.'"); *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 857-59 (N.D. Ohio 2011) (finding a reasonable jury could conclude that the use of a SWAT-style team was unreasonable). "The decision to deploy a SWAT team to execute a warrant necessarily involves the decision to make an overwhelming show of force—force far greater than that normally applied in police encounters with citizens." *Holland ex rel. Overdorff*, 268 F.3d at 1190. Therefore, as the Ninth Circuit has stated, a "nighttime incursion by a SWAT force is a far more serious occurrence than an ordinary daytime intrusion pursuant to a regular warrant and therefore requires higher justification beyond mere probable cause to search." *Bravo*, 665 F.3d at 1086.

Given the alleged time and manner of the search, the Court finds Plaintiffs have pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, the Court **DENIES** the motion to dismiss filed by Stevens and Sobczak on the second cause of action.

### 2.   Faw

Faw moves to dismiss the second cause of action on the grounds of qualified immunity, arguing that "officers who execute a search warrant often enter into a dangerous situation that requires the use of protective gear, weapons, and some use of force in order to minimize the risk of harm to both officers and occupants," and

searching the residence of suspected drug traffickers presents an "inherently dangerous" situation.  (ECF No. 13-1 at pp. 10-11.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity shields an officer from liability even if his or her action resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id*. (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).  The purpose of qualified immunity is to strike a balance between the competing "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id*.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case."  *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Supreme Court has instructed that courts may exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Pearson*, 555 U.S. at 236.

As discussed above, the Court has already determined that Plaintiffs have pleaded enough facts to plausibly allege a violation of the Fourth Amendment. Accordingly, the Court turns to whether the right was clearly established at the time of the incident.  *See Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998) ("A particular right is clearly established if the contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotations and citation omitted)).  While officers are

1  given greater latitude in the execution of a search warrant in "inherently dangerous"

2  situations, *see Avina v. United States*, 681 F.3d 1127, 1131-32 (9th Cir. 2012), the

3  Ninth Circuit had clearly established at the time of the alleged incident that the use

4  of a SWAT team, particularly at night, may be unreasonable under the totality of the

5  circumstances, *see Alexander*, 29 F.3d at 1366-67; *Bravo*, 665 F. 3d. at 1086.  Here,

6  Plaintiffs allege the Officer Defendants arrived at 5:00 a.m., unannounced, and

7  "stormed" the property wearing military fatigues and using assault rifles "in a SWAT-

8  style raid with weapons drawn."  (*See* Compl. at ¶¶ 15-16, 37.)  Plaintiffs further

9  allege that the search warrant was issued because of the observed cultivation of

10  marijuana plants by an elderly couple suffering from several serious ailments, which

11  does not automatically imply the same level of dangerousness as suspected drug

12  traffickers or gang members.  *See Avina*, 681 F.3d at 1131-32 (inherently dangerous

13  situation where warrant authorized for residence of suspected drug trafficker);

14  *Muehler v. Mena*, 544 U.S. 93, 100 (2005) (inherently dangerous situation where

15  search warrant authorized a search for weapons and a wanted gang member resided

16  on premises); *see also Alexander*, 29 F.3d at 1367 ("The force which was applied

17  must be balanced against the *need* for that force[.]").

18      Given the foregoing, and considering all alleged facts in the light most

19  favorable to Plaintiffs, the Court cannot determine at this time whether Faw is entitled

20  to qualified immunity on this cause of action.  Accordingly, the Court **DENIES**

21  Faw's motion to dismiss the second cause of action on the grounds of qualified

22  immunity.

23      **E.      Motion to Dismiss Third Cause of Action: Excessive Force in**

24          **Violation of 42 U.S.C. § 1983 Against All Defendants**

25      Plaintiffs allege the Defendant Officers "violated the Fourth and Fourteenth

26  Amendments to the U.S. Constitution by using excessive force on and effectuating

27  an unreasonable arrest of [Mrs. Little], an older, seriously ill woman of small statute

28  who posed no threat to the legitimate interests" of the officers.  (Compl. at ¶ 43.)

1    Specifically, Plaintiffs allege the Defendant Officers used excessive force by (1)
2    "handcuffing her wrists, placing them behind her back, and placing her in the back
3    of a police cruiser, which caused [Mrs. Little] serious physical discomfort;" (2)
4    "leaving on the air conditioning in the police cruiser despite the cold air outside and
5    [Mrs. Little] having informed the [officers] that she had been suffering from
6    pneumonia for two months;" (3) "ordering [Mrs. Little] to remain seated while
7    handcuffed near a hill full of red ants after she expressly informed [officers] that she
8    was seriously allergic to red ants;" (4) "ordering [Mrs. Little] to remain seated while
9    handcuffed outside despite the very cold temperatures and that [Mrs. Little] only was
10   wearing shorts and a t-shirt;" and (5) "failing to allow [Mrs. Little] to use the
11   bathroom despite her informing the [officers] that she could not control her bladder
12   due to radiation damage."  (*Id.*)

13        Stevens and Sobczak move to dismiss the third cause of action for excessive
14   force on the basis that no excessive force was used.  Defendants argue that "none of
15   the alleged facts in the complaint involve any actual force."  (ECF No. 7-1 at p. 6,
16   line 14.)  Faw similarly moves to dismiss on the grounds that only "very minimal
17   force that was incident to the execution of a search warrant" was used in arresting
18   Mrs. Little.  (ECF No. 13-1 at p. 14, lines 18-20.)

19        "Determining whether the force used to effect a particular seizure is reasonable
20   under the Fourth Amendment requires a careful balancing of the nature and quality
21   of the intrusion on the individual's Fourth Amendment interests against the
22   countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386,
23   396 (1989) (internal quotation marks and citation omitted).  A court must first
24   consider the nature and quality of the intrusion, evaluating the type and amount of
25   force inflicted.  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (citing *Deorle*
26   *v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir. 2001)); *Chew v. Gates*, 27 F.3d 1432,
27   1440 (9th Cir. 1994).  Next, the court must determine the government's interest at
28   stake in the use of force, weighing factors "including the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *see also Mattos*, 661 F.3d at 441 (citing *Deorle*, 272 F.3d at 1279-80).  "These factors, however, are not exclusive.  Rather, [courts should] examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

The reasonableness of a particular use of force requires taking the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  "The right to make an arrest carries with it the right to employ some level of force to effect it."  *Bryan*, 630 F.3d at 818 (citing *Graham*, 490 U.S. at 396).  Thus, "[a] court must consider that the officer may be reacting to a dynamic and evolving situation, requiring the officer to make split-second decisions." *Id*. (citing *Graham*, 490 U.S. at 396-97).  "[A]n officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives."  *Id*.

### 1. Handcuffing

The Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints to the officers about the handcuffs being too tight or painful are ignored.  *See e.g., Wall v. Cnty. of Orange*, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (denying qualified immunity on excessive force claim where arrestee suffered nerve damage as a result of continued restraint in tight handcuffs); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000) (finding excessive force question should have gone to a jury where an arrestee complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (denying officer's motion for summary judgment on

excessive force claim where arrestee's wrists were discolored and officer ignored his complaint); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (finding district court improperly granted summary judgment to officers where arrestee received treatment for injuries sustained as a result of rough handcuffing); *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1233 (N.D. Cal. 2005) (denying plaintiff's motion for summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight).

Plaintiffs have not alleged that Mrs. Little was demonstrably injured by the handcuffs or that she made any complaints which were ignored by the Defendant Officers about the tightness of the handcuffs. Accordingly, the Court finds that Plaintiffs do not sufficiently allege a constitutional violation with respect to how Mrs. Little was handcuffed during the arrest and **GRANTS** the motions to dismiss filed by Stevens, Sobczak, and Faw on this claim **WITH LEAVE TO AMEND**.

## 2.   Air Conditioned Vehicle

Plaintiffs rely on *Kassab v. San Diego Police Dept.*, 453 F. App'x. 747 (9th Cir. 2011), for their claim that putting Mrs. Little in an air conditioned car on a cold day, while she was only wearing shorts and a t-shirt, after she informed the officers she had pneumonia, constitutes excessive force. In *Kassab*, the Ninth Circuit reversed the district court's grant of summary judgment to defendant officers where the officers allegedly detained the plaintiff "in a police car for more than four hours, with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees." *Id.* at 748. The plaintiff claimed to have "suffered from heat stroke, had difficulty breathing, and almost passed out several times." *Id.* However, in *Dillman v. Vasquez*, No. 13–CV–00404 LJO SKO, 2015 WL 881574 (E.D. Cal. Mar. 2, 2015), the court found there was no violation of the plaintiffs' Fourth Amendment rights where the plaintiffs were exposed to excessive heat for a time period between one

and two-and-a-half hours and when the defendant officer was "confined to the *same patrol car as Plaintiffs* for substantially the same amount of time."  *Id.* at *9-10 (emphasis in original).  The *Dillman* court explained:

> Whereas an "unnecessary exposure to heat" may cause a constitutional violation, *see Dillman v. Tuolumne Cnty.*, No. 1:13–cv–404–LJO–SKO, 2013 WL 1907379, at *15 (E.D. Cal. May 7, 2013) (discussing cases) ("MTD Order"), being briefly confined in uncomfortable conditions, such as a hot patrol car, does not amount to a constitutional violation. *See Estmon v. City of New York*, 371 F. Supp. 2d 202, 214 (S.D. N.Y. 2005) (finding no Fourth Amendment violation where the plaintiff was held in hot police car for ten minutes); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding "without merit" pretrial detainee's "complain[t] about the temperature in his cell," where plaintiff failed to show those circumstances "ultimately deprived him of the minimal civilized measures of life's necessities).  In every case finding that a plaintiff's Fourth Amendment rights were violated due to being exposed to excessive heat, the plaintiff was confined for substantially longer periods of time than were Plaintiffs.  *See, e.g.*, *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (arrestee held in police vehicle for three hours in 90 degree heat); *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (prisoner tied to hitching post and exposed to sun for seven hours); *Kassab*, 453 Fed. App'x at 748 (arrestee held in police car for more than four hours). Conversely, the Fifth Circuit held that "a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment." *Arias* [*v. Amador*], 2014 WL 6633240, at *10 [(E.D. Cal. Nov. 21, 2014)] (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)).  Thus, the case law suggests that a brief (e.g., 30–minute–long) confinement in a hot patrol car does not violate the Fourth Amendment, *see, e.g.*, *Glenn*, 242 F.3d at 314, but an extended (e.g., four-hour-long) confinement in a hot police car does violate the Fourth Amendment. *See, e.g.*, *Kassab*, 453 Fed. App'x at 478.

*Id.* at *9.

Here, Plaintiffs have not alleged how long Mrs. Little was subjected to the cold temperatures of the police vehicle, what the approximate temperature was inside the vehicle, whether the officers were subject to the same conditions, or how she was

injured as a result.  As *Dillman* states, these factors are relevant to determining the unreasonableness of the confinement.  Absent such allegations, the Court finds Plaintiffs have failed to sufficiently allege a constitutional violation with respect to this claim and **GRANTS** the motions to dismiss filed by Stevens, Sobczak, and Faw on this claim **WITH LEAVE TO AMEND**.

### 3.   Ant Hill

Plaintiffs cite no authority to show that being seated in a chair on top of or near an anthill of red ants after officers are informed the arrestee is extremely allergic to red ants constitutes excessive force.  However, the Court finds the facts of *Perry v. Post*, No. CIV 04–2842–PHX–JAT (VAM), 2006 WL 3333092 (D. Ariz. Nov. 16, 2006) to be instructive.  In *Perry*, the court found the plaintiff had established an excessive force claim when the defendant officers purposefully dragged the plaintiff ten feet into an ant bed where he was bitten twenty times in two minutes while an officer taunted him about being bitten.  *Id.* at *2-4.  In making this determination, the court stated that "[p]urposefully dragging someone into an ant bed to be bitten might not be near the top of the Supreme Court's list ['of all the acts by which cruel and sadistic purpose to harm another would be manifest'] but the conduct definitely would make the list."  *Id.* at *4.  The *Perry* court rejected the defendant officers' "contention that [the] [p]laintiff must have suffered a *physical* injury to establish a constitutional violation."  *Id.* at *5 (emphasis in original).

In this case, however, there is no allegation that Mrs. Little had any physical contact with the red ants, there was any danger of physical contact, how long she was near the red ants, or that Mrs. Little suffered any injury other than mental and emotional pain as a result of being near the anthill.  She simply alleges she was seated in a chair that was either "on top of" or "near" a red anthill for an unspecified period of time.  (*Cf.* Compl. at ¶ 21 with ¶ 43(c)).)  Guided by *Perry*, the Court finds the mental and emotional pain alleged as a result of being merely being near—but not in actual contact with—red ants for an unspecified period of time, even when someone

is seriously allergic to them, does not rise to the level of plausibility required to establish a claim for excessive force. *Cf. Robinson v. Solano Cnty.*, 278 F. 3d 1007, 1010-15 (9th Cir. 2002) (finding sufficient allegations of a Fourth Amendment violation where an unarmed, peaceful plaintiff "feared for his life" when defendant officer held a gun "three or four feet" from the plaintiff's head). As such, the Court **GRANTS** the motions to dismiss filed by Stevens, Sobczak, and Faw on this claim **WITH LEAVE TO AMEND**.

### 4.   Cold Temperatures and Minimal Clothing

As previously discussed, courts have found that "unnecessary detention in extreme temperatures," including extremely cold weather, violates the Fourth Amendment's prohibitions on unreasonable searches and seizures. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (quoting *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002)); *see also Kassab,* 453 F. App'x. at 748. Here, Plaintiffs simply allege the defendant officers committed excessive force when they ordered Mrs. Little "to remain seated while handcuffed outside despite the very cold temperatures and . . . [Mrs. Little] only was wearing shorts and a t-shirt." (Compl. at ¶ 43(c).)

The Court finds these allegations insufficient to plausibly allege an excessive force claim, in light of the fact there are no allegations as to how cold it was outside, how long Mrs. Little remained outside, whether the Defendant Officers were subjected to the same temperatures, whether or not Mrs. Little informed the Defendant Officers that she was cold, whether Mrs. Little needed medical attention as a result of being in the cold, or how Mrs. Little was injured as a result of being seated in such a condition. *See Miller*, 606 F.3d at 251-52 (finding no excessive force where there were no allegations the arrestee was left in the cold longer than necessary to conduct a field sobriety test or that the deputy was not exposed to the cold for the same amount of time, and the arrestee never told the deputy he was cold or indicated he needed medical attention during the booking process, and did not present symptoms for hypothermia); *Johnson v. Ciesielski*, No. 10-cv-1453-LJM-DML, 2013

1  WL 139673, at *4 (S.D. Ind. Jan. 8, 2013) (finding no excessive force where an

2  individual was allegedly "handcuffed in sub-freezing weather [and] placed on the

3  curb with no more than a thin jacket and shorts, and held him for a time exceeding

4  one (1) hour," where there was no evidence the plaintiff demonstrated any symptoms

5  of hypothermia, complained of being cold, requested any medical attention, or had

6  medical records showing he suffered an adverse reaction to the weather); *see also*

7  *Arias v. Amador*, 61 F. Supp. 3d 960, 975-76 (E.D. Cal. 2014) (finding force is not

8  excessive when an arrestee is exposed to extreme temperatures for thirty minutes or

9  less).  Accordingly, the Court **GRANTS** the motions to dismiss filed by Stevens,

10  Sobczak, and Faw on this claim **WITH LEAVE TO AMEND**.

5.  Restroom

12  Plaintiffs allege that "on several occasions [Mrs. Little] also informed the

13  [Defendant] [O]fficers that she needed to use the bathroom and could not control her

14  bladder because of radiation damage to her bladder and intestines from her cancer

15  treatment.  Nonetheless, the [Defendant] [O]fficers did not allow [Mrs. Little] to use

16  the bathroom." (Compl. ¶22.)  As a result, [Mrs. Little] involuntarily relieved herself

17  while seated outside and was unable to change into clean clothing until the

18  [defendant] officers left." (*Id*.)  Although Plaintiffs bring this alleged violation as an

19  excessive force claim, the Court has not located any case law finding that the refusal

20  to allow a detainee to use the restroom constitutes "excessive force."  Such refusal is

21  more properly analyzed under the Fourth Amendment's prohibition on unreasonable

22  detention.

23  Under Supreme Court and Ninth Circuit precedent, "the police may detain a

24  building's occupants while officers execute a search warrant as long as the detention

25  is reasonable." *Dawson v. City of Seattle*, 435 F.3d 1054, 1065 (9th Cir. 2006). "The

26  reasonableness of a detention made pursuant to a search warrant is examined under

27  the totality of the circumstances and includes consideration of any danger posed to

28  the police by the detainee, the nature of the crime being investigated/the object of the

1    search, any resistance by the detainee, the age of the detainee, and the health or

2    medical condition of the detainee." *Campbell v. City of Bakersfield*, No. CIV F04–

3    5585 AWI TAG, 2006 WL 2054072, at *26 (E.D. Cal. July 21, 2006) (citing

4    *Franklin*, 31 F.3d at 876). "A detention conducted in connection with a search may

5    be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it

6    involves an undue invasion of privacy." *Franklin*, 31 F.3d at 876. "Detentions,

7    particularly lengthy detentions, of the elderly, or of children, or of individuals

8    suffering from a serious illness or disability raise additional concerns." *Id*.

9         Under certain circumstances, refusing to allow a detained individual to use the

10    restroom may rise to the level of a Fourth Amendment violation, but the Court finds

11    no authority, and Plaintiffs cite none, establishing the right on the part of one lawfully

12    detained pursuant to the execution of a search warrant to use a toilet upon demand.

13    *See Hunter v. Namanny*, 219 F. 3d 825, 831 (8th Cir. 2000); *see also Dawson*, 435

14    F.3d at 1069 ("[D]enying Plaintiffs' requests . . . to use the restroom unattended

15    furthered the officers' interest in facilitating an efficient inspection by [Department

16    of Public Health] personnel" as "[a] tenant left unsupervised to use the restroom . . .

17    could retrieve a weapon and assault an officer."). In *Hunter*, for example, during an

18    hour-and-a-half search, the plaintiff "asked to be allowed to use the toilet, explaining

19    that she was disabled and taking medication that caused her to urinate frequently. The

20    officers refused [the plaintiff's] repeated requests until she urinated and defecated on

21    herself." *Id*. at 828. In granting qualified immunity to the defendant officer on any

22    claimed violation of rights resulting from his denial of the plaintiff's request to use

23    the toilet, the Eighth Circuit explained that although the plaintiff's "dignity was

24    certainly compromised by what transpired as the search was conducted, [it was]

25    unable to conclude that the Constitution requires that police engaged in a search for

26    drugs allow a resident of the subject property access to a ready means of disposal of

27    such contraband." *Id.* at 831.

28

1   As mentioned above, the length of time of the detention is particularly relevant.
2   *Cf. Heitschmidt v. City of Houston*, 161 F.3d 834, 837-39 (5th Cir. 1998) (finding
3   that a detainee who was "held for more than four hours in painful restraints without
4   being allowed access to a bathroom, even though he was not a target of the
5   investigation and police had no articulable reason for suspecting him of misconduct"
6   had "at least conceivably alleged a violation of his clearly established Fourth
7   Amendment right to be free from unreasonable seizure"); *Pac. Marine Ctr., Inc. v.*
8   *Silva*, 809 F. Supp. 2d 1266, 1286-87 (E.D. Cal. 2011) (although "[a] complete denial
9   of the usage of the toilet over the period of many hours . .  might give rise to a
10  constitutional violation," only "[o]ne request to use the restroom over a four hour
11  period is not a constitutional violation."); *Campbell*, 2006 WL 2054072, at *27
12  (denying summary judgment and qualified immunity after finding that "three refusals
13  to use the restroom after six hours is arguably unnecessarily degrading and painful").

14  Given the foregoing, the Court finds Plaintiffs have not plausibly alleged an
15  excessive force claim.  Even if the Court considers this claim as one for unreasonable
16  search under the vague language of paragraph 37 of the Complaint, as Plaintiffs do
17  not allege how long Mrs. Little was detained or prevented from using the restroom,
18  the Court finds the facts as stated in the Complaint do not rise to the level of
19  plausibility required to allege a constitutional violation, and **GRANTS** the motions
20  to dismiss filed by Stevens, Sobczak, and Faw on this claim **WITH LEAVE TO**
21  **AMEND**.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**F.      Motion to Dismiss Fourth Cause of Action for Violation of 42 U.S.C. § 1983: *Miranda* Violations Against Stevens[4]**

Plaintiffs allege that Stevens "violated the Fifth and Fourteenth Amendments to the U.S. Constitution by interrogating the LITTLES while they were in custody without reading them their rights, as required by *Miranda v. Arizona*, 384 U.S. 486 (1966)." (Compl. at ¶ 49; *see also* ¶¶ 18, 20, 50-52.) "The *Miranda* exclusionary rule [is] a prophylactic measure to prevent violations of the right protected by the text of the Self–Incrimination Clause [of the Fifth Amendment]—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).  However, failing to read a suspect his or her *Miranda* rights is not a Fifth Amendment violation "absent use of the statements in a criminal case." *Stoot v. City of Everett*, 582 F. 3d 910, 923 (9th Cir. 2009) (citing *Chavez*, 538 U.S. at 766).  A statement "has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Id.* at 925.  A Fifth Amendment *Miranda* violation may provide the basis for a section 1983 action.  *See Crowe v. Cnty. of San Diego*, 608 F.3d 406, 430 (9th Cir. 2010); *Stoot*, 582 F.3d at 925-26.

Plaintiffs concede in their opposition that "they failed to allege that they gave any statements or that [such statements] were used against them at trial." (ECF No. 11 at p. 6, lines 3-4.)  Plaintiffs further failed to allege the statements were used against them in any other capacity, but assert they would be able to allege additional facts if given leave to amend.  (*See id*. at p. 6, lines 4-7.)  Although Stevens and

---

[4]      Although Plaintiffs state in paragraph 49 that the Defendant Officers violated the Fifth and Fourteenth Amendments "by interrogating the LITTLES while they were in custody without ready them their [*Miranda*] rights," the rest of the Complaint clearly indicates that this cause of action is only against Stevens.  If Plaintiffs choose to file a First Amended Complaint, they must clarify who the defendants are for each cause of action, and in what capacity they are being sued.

1  Sobczak argue leave to amend should not be granted, the Court finds it appropriate

2  to grant Plaintiffs leave to amend.  For the foregoing reasons, the Court **GRANTS**

3  the motions to dismiss filed by Stevens, Sobczak, and Faw with respect to this claim

4  **WITH LEAVE TO AMEND**.

5    **G.**   **Motion to Dismiss Fifth Cause of Action for Violation of 42 U.S.C.**

6      **§ 1983: Due Process Violation Against All Defendants**

7        In the Complaint, Plaintiffs claim that the Defendant Officers violated the

8  Fourteenth Amendment to the U.S. Constitution by (1) destroying material,

9  exculpatory evidence, and (2) depriving Plaintiffs of their marijuana without due

10  process of law.  (*Id.* at ¶¶ 54, 55.)  Faw moves to dismiss this claim on the grounds

11  that marijuana is "absolutely prohibited by federal law," thus Plaintiffs "have no

12  substantive or procedural due process right under the Fourteenth Amendment to

13  possess a narcotic that is prohibited under federal law."  (ECF No. 13-1 at pp. 15,

14  16.)  Additionally, Faw argues, under the federal Controlled Substances Act ("CSA"),

15  marijuana possessed in violation of the act is subject to forfeiture and destruction.

16  (*Id.* at p. 16.)

17        "The Fourteenth Amendment places procedural constraints on the actions of

18  government that work a deprivation of interests enjoying the stature of 'property'

19  within the meaning of the Due Process Clause."  *Memphis Light Gas & Water Div.*

20  *v. Craft*, 436 U.S. 1, 9 (1978).  "Property interests derive not from the Constitution

21  but from existing rules or understandings that stem from an independent source such

22  as state law."  *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1057 (9th Cir.

23  2012) (internal quotations and citation omitted); *see Memphis Light*, 436 U.S. at 9;

24  *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 692 (9th Cir. 1998).  However, "federal

25  constitutional law determines whether that interest rises to the level of a 'legitimate

26  claim of entitlement' protected by the Due Process Clause." *Memphis Light*, 436 U.S.

27  at 9; *Samson*, 683 F.3d at 1057; *Lawson*, 139 F.3d at 692.  That is, even though "state

28  law creates a property interest, not all state-created rights rise to the level of a

constitutionally protected interest." *Brady v. Gebbie*, 859 F.2d 1543, 1548 n. 3 (9th Cir. 1988).

With respect to medical marijuana, although California state law may create a property interest in the marijuana, California district courts have found there is no protected property interest for purposes of the Fourteenth Amendment. *See Barrios v. Cnty. of Tulare*, 13–CV–1665 AWI GSA, 2014 WL 2174746, at *4 (E.D. Cal. May 23, 2014); *Staffin v. Cnty. of Shasta*, No. 13:cv-00315 JAM-CMK, 2013 WL 1896812, at *4-5 (E.D. Cal. May 6, 2013); *Schmidt v. Cnty. of Nev.*, No. 10-cv-3022 FCD/EFB, 2011 WL 2967786, at *5-6 (E.D. Cal. July 19, 2011).

As the court explained in *Schmidt*:

> The Supreme Court has held that no person can have a legally protected interest in contraband per se. *See United States v. Jeffers*, 342 U.S. 48, 53, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *see also Cooper v. City of Greenwood, Mississippi*, 904 F.2d 302, 305 (5th Cir.1990) . . . . "An object is contraband per se if its possession, without more, constitutes a crime; or in other words, there is no legal purpose to which the object could be put." *United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir.2008). Under the federal Controlled Substances Act ("CSA"), it is illegal for any private person to possess marijuana. 21 U.S.C. §§ 812(c), 841(a)(1), 844(a). Thus, under federal law, marijuana is contraband per se, which means no person can have a cognizable legal interest in it. *See Gonzales v. Raich*, 545 U.S. 1, 27, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) ("The CSA designates marijuana as contraband for any purpose." (emphasis in original)).

> "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Id*. at 29. While California's Compassionate Use Act ("CUA") provides narrow exceptions for marijuana use involving qualified patients and care givers, federal law dictates that marijuana is illegal for any purpose. *Id.* at 27. . . .

> In this case, plaintiff cannot recover damages as a result of the confiscation or destruction of marijuana because he had no cognizable property interest in the marijuana. Plaintiff asserts a due process claim under the federal Constitution in federal court, where, under federal law, marijuana is undisputably illegal and contraband per se.

1    *Schmidt*, 2011 WL 2967786, at *5-6.

2          Plaintiffs' reliance on *Cnty. of Butte v. Super. Ct.*, 175 Cal. App. 4th 729

3    (2009), is misplaced.  In *Butte*, the plaintiff asserted that the destruction of his medical

4    marijuana plants was a violation of due process under the California Constitution,

5    and not, as asserted here, a violation of the Fourteenth Amendment.  *See Butte*, 175

6    Cal. App. 4th at 739-40 (acknowledging the Compassionate Use Act "has no effect

7    on marijuana arrests and prosecutions or searches and seizures under federal law

8    because "[t]he Act presents the unusual circumstance of a state law that, under limited

9    circumstances, permits the possession of a substance deemed to be contraband under

10   federal law.").

11         As Plaintiffs had no property interest in the marijuana that was protected by

12   the Fourteenth Amendment's due process clause, Faw's motion to dismiss Plaintiffs'

13   fifth claim for deprivation of Plaintiffs' marijuana without due process of law is

14   **GRANTED WITHOUT LEAVE TO AMEND.**  The Court finds that the claim

15   cannot be saved by amendment.  *See Schreiber Distrib. Co.*, 806 F.2d at 1401; *see*

16   *also Barrios*, 2014 WL 2174746, at *5; *Staffin*, 2013 WL 1896812, at *5; *Schmidt*,

17   2011 WL 2967786, at *6.

18         However, as Plaintiffs point out in their opposition, Faw does not move to

19   dismiss Plaintiffs' claim the Defendant Officers violated the Fourteenth Amendment

20   by destroying material, exculpatory evidence.  (*See* ECF No. 15 at p. 9.)  Faw does

21   not make this argument until his reply.  Because Faw did not make this argument in

22   his initial motion to dismiss, the argument is waived.  *See Somers*, --- F. Supp. 3d ---

23   -, 2015 WL 4483955, at *13; *Dytch*, 2011 WL 839421, at *3; *Zamani*, 491 F.3d at

24   997; *Anderson*, 472 F.3d at 668.

25         **H.    Gore's Motion to Dismiss**

26         Gore moves to dismiss all causes of action against him, in both his official and

27   individual capacities, arguing that "the Complaint in the instant case merely alleges

28   that Defendants had promulgated and adopted policies causing officers to execute

1    warrants unlawfully; such a conclusory, formulaic recitation of a claim is insufficient
2    to overcome a motion to dismiss." (ECF No. 7-1 at p. 7.) As with Zimmerman, Gore
3    is being sued solely in his official capacity.[5] (*See* ECF No. 11 at p. 6, lines 11-12.)
4    Therefore, this suit shall be treated as a suit against the entity. *See Graham*, 473 U.S.
5    at 165-66; *Streit v. Cnty. of Los Angeles*, 236 F.3d 552 (9th Cir. 2001).

6         Local governing bodies can be sued directly under section 1983 when "the
7    action that is alleged to be unconstitutional implements or executes a policy
8    statement, ordinance, regulation, or decision officially adopted and promulgated by
9    that body's officers," or there is a widespread practice that, although not authorized
10   by an ordinance or an express municipal policy, is "so permanent and well settled as
11   to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*
12   *of City of New York*, 436 U.S. 658, 690–91 (1978); *see also Bd. of Cnty. Comm'rs of*
13   *Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997); *Castro v. Cnty. of Los*
14   *Angeles*, 797 F.3d 654, 671 (9th Cir. 2015) ("[A] plaintiff . . . must show a pattern of
15   similar incidents in order for the factfinder to conclude that the alleged informal
16   policy was 'so permanent and well settled' as to carry the force of law."). The Ninth
17   Circuit has broadly defined "policy" for purposes of a *Monell* claim as "'a deliberate
18   choice to follow a course of action . . . made from among various alternatives by the
19   official or officials responsible for establishing final policy with respect to the subject
20   matter in question.'" *Brass v. Cnty. of Los Angeles*, 328 F.3d 1192, 1199 (9th Cir.
21   2003) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)). A policy can
22   be one of action or inaction. *Fairley*, 218 F.3d at 918.

23        In the Complaint, Plaintiffs allege Gore, as the chief policymaker and decision
24   maker for the San Diego County Sheriff's Department on the use of force and the
25   disposition of evidence, "promulgated, adopted, ratified, and acquiesced to policies,

---

26        [5]    Plaintiffs similarly allege Gore "is the chief policymaker and
27   decisionmaker for the San Diego County Sheriff's Department." (Compl. at ¶ 4.)
     However, if Plaintiffs choose to file a First Amended Complaint, they must specify
28   whether Gore is being sued in his official or individual capacity.

1    procedures, and customs" governing: (1) "the conduct of investigations and execution

2    of search warrants relating to marijuana offenses that cause police officers to conduct

3    such investigations and execute such warrants in violation of the Fourth and

4    Fourteenth Amendments;" (2) "the conduct of police contacts with civilians that lead

5    to arrests of individuals with no regard to whether they can pose a risk of physical

6    resistance and with no regard to the discomfort or pain of those individuals, and such

7    policies, procedures, and customs cause police officers to illegally arrest

8    individuals;" and (3) "the disposition of evidence in marijuana investigations by

9    which law enforcement are directed to seize and destroy marijuana and marijuana

10   products soon after collection without regard to the materiality or exculpatory nature

11   of the evidence and without regard to the rights of the owners of the marijuana to

12   seek its return, even in the face of evidence that the marijuana was legally possessed

13   and cultivated."  (Compl. at ¶¶ 4, 38, 44, 56.)

14        While the Ninth Circuit previously had a liberal pleading policy with respect

15   to *Monell* claims, requiring nothing more than "a bare allegation that government

16   officials' conduct conformed to some unidentified government policy or custom,"

17   this precedent did not survive *Iqbal*.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666

18   F.3d 631, 636-37 (9th Cir. 2012).  Courts in this circuit now generally dismiss claims

19   that fail to identify the specific content of the municipal entity's alleged policy or

20   custom.  *See La v. San Mateo Cnty. Transit Dist.,* No. 14-cv-01768-WHO, 2014 WL

21   4632224, at *7 (N.D. Cal. Sept. 16, 2014).

22        Under *Iqbal*, the Court finds Plaintiffs' bare allegations as to Plaintiffs' second

23   and third causes of action to be insufficient to give fair notice and to enable Gore to

24   defend himself effectively.  In addition, the allegations with respect to Plaintiffs' third

25   cause of action must fail because, as discussed herein, Plaintiffs have failed to allege

26   a cognizable underlying constitutional violation.  *See Scott v. Henrich*, 39 F.3d 912,

27   916 (9th Cir. 1994).  With respect to Plaintiffs' fifth cause of action, Plaintiffs'

28   allegations that Gore "promulgated, adopted, ratified, and acquiesced to policies,

procedures, and customs governing the disposition of evidence in marijuana investigations by which law enforcement are directed to seize and destroy marijuana and marijuana products soon after collection without regard to the rights of the owners of the marijuana to seek its return, even in the face of evidence that the marijuana was legally possessed and cultivated" must similarly fail because Plaintiffs have not sufficiently alleged an underlying cognizable due process violation. (*See* Compl. at ¶ 56.)

However, with respect to Plaintiffs' allegations that Gore "promulgated, adopted, ratified, and acquiesced to policies, procedures, and customs governing the disposition of evidence in marijuana investigations by which law enforcement are directed to seize and destroy marijuana and marijuana products soon after collection without regard to the materiality or exculpatory nature of the evidence," the Court finds Plaintiffs allegations to be sufficient to allege a *Monell* claim. (Compl. at ¶¶ 38, 44, 56.)

Accordingly, Gore's motion to dismiss the *Monell* claims is **GRANTED IN PART, WITH LEAVE TO AMEND** as to the second and third causes of action, and **DENIED IN PART**.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Zimmerman's motion to dismiss (ECF No. 3); **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss filed by Gore, Sobczak, and Stevens (ECF No. 7); and **GRANTS IN PART** and **DENIES IN PART** Faw's motion to dismiss (ECF No. 13). In summary:

(1)    The Complaint only alleges section 1983 causes of action against Gore and Zimmerman in their official capacities;

(2)    The first cause of action for invalid search warrant is alleged against Stevens only;

(3)    The second cause of action for unreasonable search is not dismissed;

(4)   The third cause of action for excessive force is dismissed with leave to amend;

(5)   The fourth cause of action for *Miranda* violations against Stevens is dismissed with leave to amend;

(6)   The fifth cause of action for due process violations is dismissed without leave to amend as to Plaintiffs' claim the Defendant Officers violated the Fourteenth Amendment by depriving Plaintiffs of their marijuana without due process of law.  However, the fifth cause of action is not dismissed as to Plaintiffs' claim the Defendant Officers violated the Fourteenth Amendment by destroying material, exculpatory evidence; and

(7)   Sheriff Gore is dismissed from all causes of action except the *Monell* claim in the fifth cause of action that he "promulgated, adopted, ratified, and acquiesced to policies, procedures, and customs governing the disposition of evidence in marijuana investigations by which law enforcement are directed to seize and destroy marijuana and marijuana products soon after collection without regard to the materiality or exculpatory nature of the evidence."

If Plaintiffs wish to file a First Amended Complaint, they must do so no later than **January 15, 2016**.

**IT IS SO ORDERED.**

**DATED:  December 8, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**

14cv02181