UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH DEE LITTLE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM D. GORE, *et al.*, <br><br> Defendants. | Case No. 14-cv-02181-BAS(JMA) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> **[ECF Nos. 21, 22, 23]** |

On September 12, 2014, Plaintiffs filed a Complaint against the Defendant Officers. (ECF No. 1.) Following Defendants' previous Motions to Dismiss, this Court ordered the Complaint dismissed in part with leave to amend. (ECF No. 17.) On February 29, 2016, Plaintiffs filed their First Amended Complaint ("FAC"). (ECF No. 20.) Defendants now move to dismiss the FAC in its entirety. (ECF Nos. 21, 22, 23.) Many of the arguments in the Motions to Dismiss and Responses in Opposition are largely a rehashing of the Court's previous ruling on Defendants' earlier Motions to Dismiss. Therefore, as noted below, many of the rulings made in the previous Order (ECF No. 17) are simply adopted and repeated for the purposes of this Order.

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss (ECF Nos. 21, 22, 23).

I. **BACKGROUND**[1]

On October 16, 2012, Matt Stevens, a Deputy Sheriff for the County of San Diego ("Stevens"), swore an affidavit to San Diego County Superior Court stating that he observed "well over 100 growing marijuana plants" on Plaintiffs' property while conducting aerial reconnaissance on September 17, 2012, and October 11, 2012. (FAC ¶¶ 11–12.) Stevens "knew from his observations that there were well under 100 marijuana plants on the [property] but embellished his observations in order to deceive Judge Rubin into issuing a search warrant." (*Id.* ¶ 12.) Judge Rubin subsequently issued a search warrant authorizing the search of Plaintiffs' property and the seizure of any marijuana. (*Id.* ¶ 14.)

At 5:00 a.m. on October 17, 2012, Stevens together with Evan Sobczak, a Deputy Sheriff for the County of San Diego ("Sobczak"), Paul Paxton, a Detective for the San Diego Police Department ("Paxton") and Justin Faw, a Special Agent for the Drug Enforcement Administration ("Faw"), all members of the San Diego County Integrated Narcotics Task Force (collectively, the "Defendant Officers"), executed the search warrant at Plaintiffs' property. (FAC ¶ 15.) The Defendant Officers, "dressed in military-style fatigues and armed with firearms, some of which were assault rifles, stormed [Plaintiffs' property] in a SWAT-style raid with weapons drawn." (*Id.* ¶ 16.) Upon entering Plaintiffs' property, the Defendant Officers located Mr. Little, arrested him and put him in handcuffs. (*Id.* ¶ 17.) Stevens allegedly "questioned [Mr. Little] without reading him *Miranda* rights despite

---

[1] All facts are taken from the FAC. For the purposes of these Motions, the Court assumes all facts alleged in the FAC are true. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

keeping [Mr. Little] in handcuffs." (*Id.* ¶ 18.) The Defendant Officers then located Mrs. Little, and Sobczak "arrested [her] by tightly putting handcuffs on [her] wrists behind her back and locking her in the rear seat of his patrol vehicle." (*Id.* ¶ 19.) At the time of the arrest, Mrs. Little "suffered from severe arthritis." (*Id.* ¶ 20.) She "feared asking any of the NTF officers to loosen her handcuffs" and "was forced to wear the handcuffs for at least 1 ½ hours." (*Id.*)

Prior to her arrest, Mrs. Little informed the Defendant Officers that "she has been sick for the past two months with pneumonia." (FAC ¶ 19.) Nonetheless, Sobczak put Mrs. Little, who was wearing only shorts and a t-shirt, in a police car for approximately 30 minutes with the air conditioner running. (*Id.* ¶¶ 21, 25.) "During this time, [Mrs. Little] was visibly shivering due to the cold air, which was approximately 50 degrees Fahrenheit and at least as cold as the outside air." (*Id.* ¶ 21.) The Defendant Officers ignored Mrs. Little's complaint that she was too cold. (*Id.*) "As a result of her lengthy exposure to these cold conditions, [her] pneumonia symptoms were exacerbated in the following days, lengthening the time for her recovery." (*Id.* ¶ 25.)

"At some point while she was in the police car, [Stevens] questioned [Mrs. Little] without reading her *Miranda* rights." (FAC ¶ 22.) Sobcazk then removed Mrs. Little from the patrol vehicle "after an unknown period of time" and ordered her to remain seated in a chair. (*Id.* ¶ 23.) Before sitting down, Mrs. Little informed the Defendant Officers "that the chair was on top of a hill of red ants and that she was extremely allergic to red ants." (*Id.*) In fact, Mrs. Little's "allergy is so severe that it can cause her to go into anaphylactic shock for which she normally carries an EpiPen which she did not have access to at the time." (*Id.* ¶ 24.) Mrs. Little told the Defendant Officers this "but they failed to take action" and therefore Mrs. Little "began having a panic attack as she was afraid the ants may get on her feet or that she might fall out of the chair on to the anthill, either of which could have killed her." (*Id.*)

Despite informing the Defendant Officers on several occasions that she needed to use the bathroom and could not control her bladder because of radiation damage to her bladder and intestines from her cancer treatment, Mrs. Little was not allowed to use the bathroom. (FAC ¶ 26.) As a result, she involuntarily relieved herself while seated outside and was unable to change into clean clothing until the Defendant Officers left the property. (*Id.*)

Officers further threatened Mrs. Little, saying they would call animal control to remove her Bengal kittens, "despite having no cause to believe the animals were being mistreated, abused or maintained in violation of law." (FAC ¶ 27.)

At the time of the search, Plaintiffs were "valid qualified patients under Cal. Health & Safety [Code] §§ 11362.5 and 11362.765," and Mr. Little was Mrs. Little's primary caregiver. (FAC ¶ 28.) The Defendant Officers were aware of these facts. (*Id.*)

In the course of conducting the search, Stevens claimed the Defendant Officers located over 640 pounds of marijuana "in the form of untrimmed buds, packaged marijuana, and marijuana edibles." (FAC ¶ 29.) "In reality, [they] were in possession of far less processed and unprocessed marijuana." (*Id.*) The Defendant Officers destroyed the seized marijuana the following day by dumping it at the Miramar Landfill. (*Id.* ¶ 30.)

On November 5, 2012, the San Diego County District Attorney filed a criminal complaint charging Plaintiffs with one count of unlawful possession of marijuana for sale in violation of California Health and Safety Code Section 11359, and one count of unlawful cultivation of marijuana in violation of California Health and Safety Code Section 11358. (FAC ¶ 31.) In the course of pretrial hearings, the trial court granted a motion to exclude evidence pursuant to *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984), "finding that the [Defendant] [O]fficers had violated the [Plaintiffs'] due process rights by destroying material, exculpatory evidence." (*Id.* ¶ 32.) At the end of the trial, the jury returned

a verdict of not guilty on the charge of unlawful possession and deadlocked on the charge of unlawful cultivation. (*Id.* ¶ 33.) The trial court ultimately dismissed the cultivation count in the furtherance of justice pursuant to California Penal Code Section 1385. (*Id.*)

The FAC reasserts causes of action in violation of 42 U.S.C. § 1983 for: (1) search and seizure unsupported by a proper warrant against Stevens; (2) unreasonable search against all Defendants; (3) excessive force against all Defendants; (4) *Miranda* violations against Stevens; and (5) due process violations against all Defendants. Plaintiffs add two causes of action against Faw for unreasonable search and seizure and due process violations, both pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombley*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Courts may not usually consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Id*. It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

//

//

### III. ANALYSIS

#### A. Count One – Invalid Warrant v. Stevens

Count One alleges that Stevens "made fraudulent statements in his warrant affidavit concerning the amount of marijuana on the subject property and the implications of California's medical marijuana laws." (FAC ¶ 35.) Stevens argues this Count should be dismissed because of collateral estoppel or issue preclusion. (ECF No. 23.) Stevens attaches a minute order from the criminal state court proceeding saying that the state court judge denied a Motion to Quash or Traverse the Warrant filed pursuant to California Penal Code Section 1538.5(a)(1)(B)(i). (ECF No. 23, Ex. A.)[2]

Stevens argues this minute order shows the validity of the search warrant was already litigated in state court and should be given preclusive effect by this Court. There are two problems with Stevens' argument. First, this case poses a unique situation where, because the charges were eventually dismissed, Plaintiffs were not able to appeal the denial of the motion to traverse the warrant. Plaintiffs argue that they thus were unable to have a full and fair litigation of the issue. A comparison of *Ayer v City of Richmond*, 895 F.2d 1267 (9th Cir. 1990), with *Heath v. Cast*, 813 F.2d 254 (9th Cir. 1987), is helpful to the Court's analysis.

In *Heath*, similarly to this case, the charges against a criminal defendant were ultimately dismissed. During the motion to suppress hearing, the criminal court found the officers had acted without probable cause in arresting the defendant. Thus, the evidence was suppressed and the charges dismissed. When the criminal defendant then filed a civil action pursuant to 42 U.S.C. § 1983, the officers argued that the issue had already been litigated in state court during the motion to suppress

---

[2] The Court will grant Stevens' request to take judicial notice of this minute order pursuant to Rule 201 of the Federal Rules of Civil Procedure. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 747 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)) (noting a court may take judicial notice of court filings and other matters of public record).

hearing and, therefore, issue preclusion should apply. The Ninth Circuit found that a ruling on a motion to suppress is a "preliminary evidentiary determination and is independent of the real question in the proceedings, that of the accused's guilt." 813 F.2d at 258 (quoting *People v. Gephart*, 93 Cal. App. 3d 989, 1000 (1979)) (internal quotation marks omitted). Thus, the court found granting the motion to suppress in state court could not act as issue preclusion in a civil rights case in federal court based on the same conduct.

The court in *Ayers* disagreed. Relying on the more recent California state case, *McGowan v. City of San Diego*, 208 Cal. App. 3d 890 (1989), the Court found that a motion to suppress could constitute a final judgment. In *Ayers,* the criminal court denied Ayer's motion to suppress based on a false arrest. Ayer appealed this ruling, and it was affirmed. Ayers pled guilty to the criminal charges, but filed an action under 42 U.S.C. § 1983 for false arrest. The court distinguished *Heath* because Ayers was able to appeal his criminal conviction, whereas Heath was not.

Since the Plaintiffs in this case were not given the opportunity to appeal, the facts in this case appear more akin to *Heath* than *Ayers.* However, the Court need not reach this issue because ultimately the minute order presented by Stevens does not show what issue was ultimately litigated and decided by the state court. Collateral estoppel requires identity of issues. *See Ayers*, 895 F.2d at 1271. In order for issue preclusion or collateral estoppel to apply, Stevens would have to show that Plaintiffs raised the issue of his alleged false statements in the search warrant, the issue was litigated and the Superior Court found against Plaintiffs on this issue. The brief minute order submitted by Stevens only reflects that a motion to quash was denied pursuant to California Penal Code Section 1538.5(a)(1)(B)(i). Subsection 1538.5(a)(1)(B)(i) allows a judge to suppress evidence obtained as the result of a search warrant that is insufficient on its face.

//

//

The minute order gives no indication as to what issues the trial court decided. For all this Court knows, the Motion to Quash or Traverse the Warrant could have been denied because it was untimely, the issue was being deferred until trial, or the moving party failed to produce witnesses as ordered.  Even if the criminal court reached the merits, it could just have found that the search warrant stated sufficient probable cause without reaching any issue regarding false statements in the warrant. Nothing in the minute order illuminates the issue raised or the reasons for the denial of the motion.

Because Stevens' Motion to Dismiss Count One fails to show that the same issues raised in this lawsuit were fully litigated in the state court, his Motion to Dismiss must be **DENIED**.

### B.     Count Two—Unreasonable Search v. All Defendants

#### 1.     Faw's Claims

Defendant Faw moves to dismiss Count Two by simply making the same arguments the Court denied in an earlier Order (ECF No. 21).  For the reasons stated in the Order denying Faw's Motion to Dismiss Count Two of the original Complaint (ECF No. 17), his motion to dismiss this Count is **DENIED**.

#### 2.     Paxton's Claims

Paxton argues the FAC fails to allege any facts that plausibly suggest he was personally involved in the violation.  However, the FAC alleges Paxton was one of the officers who executed the search warrant at 5 a.m., "storming" the property in military fatigues, SWAT-style with assault rifles drawn.  (FAC ¶¶ 15–16.)  Hence, the allegations are sufficient that he was personally involved and his Motion to Dismiss on this ground is **DENIED**.

//

//

### 3. *Monell* Claims

This Court previously found Plaintiffs' *Monell* claims in the original Complaint were "insufficient to give fair notice" and did not enable Defendants to defend themselves effectively. (ECF No. 17 at 30.) The original Complaint alleged that the San Diego County Sheriff's Office adopted or acquiesced in policies governing "the conduct of investigations and execution of search warrants in regard to marijuana offenses that cause police officers to conduct such investigations and execute such warrants in violation of the Fourth and Fourteenth Amendments." (Compl. ¶ 38.)

The FAC now adds the allegation that these policies:

> direct law enforcement officials to treat each investigation or execution of a search warrant related to the residential cultivation of marijuana as though a violent group of heavily armed individuals is present and as though there is no possibility that the individual residents could be compliant with California law. Such policies, procedures and customs authorize and direct the use of powerful tactical police gear, SWAT-style raid tactics and violent behavior.

(FAC ¶ 42.) Although Defendants claim that these allegations are substantially the same as the original Complaint and that the allegations fail to identify the specific content of the municipal entity's alleged policy or custom, this Court disagrees. To state a claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), a plaintiff must allege either a policy, ordinance or regulation or a custom "even though such a custom has not received formal approval through the body's official decision-making channels" that deprives the plaintiff of his constitutional rights and causes injury. *Id.* at 690–91. Assuming the allegations in Plaintiffs' FAC are true, as this Court must, the allegations are sufficiently specific to constitute a cause of action under *Monell*, and therefore, Defendants' Motions to Dismiss on this ground are **DENIED**.

//

//

### C. Count Three—Excessive Force v. All Defendants

The Court previously ruled that Mrs. Little's allegations of excessive force were insufficient based on the claims of (1) handcuffing causing her severe discomfort, (2) leaving her in an air conditioned car despite knowing she was recovering from pneumonia, (3) ordering her to remain seated in handcuffs near red ants when she informed the officers she was severely allergic to red ants, (4) being left outside wearing only short and a t-shirt despite her recent recovery from pneumonia and (5) failing to allow her to use the restroom even though she informed the officers she could not control her bladder because of radiation damage. (ECF No. 17.) However, the Court gave Plaintiffs leave to amend these allegations. (*Id.*)

Plaintiffs, in responding to Defendants' Motions, argue that the following facts have been added to the FAC:

> (1) The handcuffs caused Mrs. Little severe pain. She did not complain to the officers because she had been told repeatedly to shut up, but her husband did ask that her handcuffs be moved from back to front, and his requests were ignored. (FAC ¶¶ 19–20.)
>
> (2) Mrs. Little was left in the air conditioned car alone for approximately 30 minutes, and the temperature was around 50 degrees Fahrenheit. The Defendants were all in full uniform wearing heavy police gear to ensure their warmth. (*Id.* ¶¶ 21, 25.)
>
> (3) After she was removed from the car, she was seated outside in handcuffs for approximately 45 minutes. (*Id.* ¶¶ 23, 25.)

Although Plaintiffs' Responses in Opposition to the Motions to Dismiss do not argue any new facts with respect to the allegations about the red ant exposure or the failure to allow use of the restroom (ECF Nos. 25, 26, 27), it appears the FAC adds the following facts:

//

//

(1) Mrs. Little was so allergic to red ants that it "can cause her to go into anaphylactic shock for which she normally carries an EpiPen which she did not have access to at that time" (*Id.* ¶ 24.)

(2) When sitting on the ant hill, Mrs. Little "began having a panic attack as she was afraid the ants may get on her feet or that she might fall out of the chair on to the anthill, either of which could have killed her." (*Id.*)[3]

### 1. Handcuffing

Although overly tight handcuffs can constitute excessive force, *Wall v. County of Orange*, 364 F.3d 1107 (9th Cir. 2004), that does not appear to be the allegation in this case. Instead, Mrs. Little asserts that, because she had arthritis, the handcuffs caused her severe pain, and she was afraid to tell the officers she was in pain because they had repeatedly told her to shut up. (FAC ¶¶ 19–20.) She alleges her husband asked if her handcuffs could be moved from back to front but the officers refused. (*Id.*) However, noticeably absent from the FAC are allegations that: (1) the handcuffs were overly tight; (2) Mrs. Little told the officers that the handcuffs were hurting her; (3) any obvious physical manifestation of her pain was apparent to the Defendants; or (4) Mrs. Little was demonstrably injured as a result of the handcuffs. Therefore, for the reasons stated in the Court's original Order Granting the Motions to Dismiss this Count (ECF No. 17), Defendants' Motions to Dismiss on this ground are **GRANTED**.

//
//
//
//

---

[3] Although Plaintiffs' redlined complaint claims that paragraph 26 of their FAC adds new facts about Mrs. Little's lack of access to a restroom, this paragraph appears to be a verbatim recitation of paragraph 21 of the original Complaint. The Court will only address the new allegations and relies on its previous Order for claims previously made in the earlier Complaint.

### 2. Air Conditioned Car and Confinement in Cold Temperatures

Plaintiffs now add allegations that Mrs. Little was in the air conditioned car for 30 minutes and that the temperature in the car was around 50 degrees Fahrenheit. Plaintiffs then allege that Mrs. Little was removed from the car and handcuffed outside for a period of 45 minutes, again in 50 degree temperatures. As pointed out in *Dillman v. Vasquez,* No. 13-CV-00404 LJO SKO, 2015 WL 881574, at *9 (E.D. Cal. Mar. 2, 2015), "the case law suggests that a brief (e.g., 30-minute-long) confinement in a hot patrol car does not violate the Fourth Amendment" whereas extended periods of confinement (e.g., four-hours-long) do. A similar analysis applies to Plaintiffs' allegations of confinement in the cold. The allegation that Mrs. Little was confined for 30 minutes in a cold, air conditioned car are insufficient to constitute excessive force. Similarly, the allegation that she was left outside for 45 minutes when the temperature was around 50 degrees Fahrenheit is simply insufficient to constitute excessive force. Therefore, for the reasons stated in the Court's original Order Granting the Motions to Dismiss this Count (ECF No. 17), Defendants' Motions to Dismiss on this ground are **GRANTED**.

### 3. Red Ants and Failure to Allow Access to Restroom

Plaintiffs fail to argue any new significant facts and simply argue that the Court's original Order improperly applies the case law. Therefore, the Court adopts its original Order Granting the Motions to Dismiss (ECF No. 17) and **GRANTS** Defendants' Motions to Dismiss on this Ground.

## D. Count Four—*Miranda* Violation v. Stevens

In the fourth cause of action, Plaintiffs allege that they were forced to testify against themselves in violation of their Fifth and Fourteenth Amendment rights when Officer Stevens interrogated them without advising them first of their rights under

*Miranda v. Arizona.* (FAC ¶ 53.) Plaintiffs allege they each gave statements to Stevens which were later used against them at their criminal trial. (*Id.* ¶ 54.)

Stevens argues a mere failure to advise of *Miranda* rights is insufficient to show that the Plaintiffs' free will was overborne such that they were compelled or coerced to make statements in any way. (ECF No. 23.) However, Stevens ignores the fact that the FAC also realleges paragraphs 1–33 in Count Four, thus claiming that the misrepresentations in the search warrant, the entry at 5 a.m. in SWAT uniforms with assault rifles drawn, handcuffs that bothered Mrs. Little's arthritis, threats to remove the Bengal kittens, cold temperatures, proximity to red ants, and failure to allow access to the restroom, coupled with the failure to advise of *Miranda* rights, compelled and coerced the Plaintiffs to make statements that were later used against them. The Court need not determine whether an absence of *Miranda* rights alone would constitute a constitutional violation because in this case Plaintiffs allege more than the absence of those warnings alone. These allegations, assuming they are all true, are sufficient to allege a cause of action. Therefore, Defendants' Motions to Dismiss this count are **DENIED**.

### E.     Count Six—Unreasonable Search v. Faw

Defendant Faw moves to dismiss the sixth cause of action to the extent it is being filed against him in his official capacity or against the DEA or the United States, as the Court lacks subject matter jurisdiction over such a suit. *See generally Cato v. United States*, 70 F.3d 1103 (9th Cir. 1995). Although the Plaintiffs respond that they are not alleging a cause of action against Faw in his official capacity, nor are they making any claim against the United States or any agency of the United States, the FAC clearly state the Little are suing Faw "in both his individual and official capacity." (FAC ¶ 9.) Hence, Faw's Motion to Dismiss on this ground is **GRANTED** to the extent it is being filed against Faw in his official capacity but **DENIED** otherwise.

### F. Counts Five and Seven—Due Process Violations

Plaintiffs voluntarily move to dismiss the Fifth and Seventh causes of action. (ECF No. 25.) Therefore, Defendants' Motions to Dismiss these two causes of action are **GRANTED**.

## IV. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss. (ECF Nos. 21, 22, 23.) The Court **GRANTS** Defendants' Motions to Dismiss Counts Three, Five and Seven. Counts Five and Seven are dismissed **WITHOUT PREJUDICE**. However, because this Court gave Plaintiffs leave to amend with directions after dismissing Count Three in the original Complaint, the Court finds allowing Plaintiffs further leave to amend this count would be futile. Hence the Court dismisses Count Three **WITH PREJUDICE**.

The Court **DENIES** Defendants' Motions to Dismiss Counts One, Two, Four and Six, except that the Motion to Dismiss Count Six is **GRANTED** to the extent it seeks a claim against Agent Faw in his official capacity.

**IT IS SO ORDERED.**

DATED: May 26, 2016

*Cynthia Bashant*
Hon. Cynthia Bashant
United States District Judge